JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 598-4150
Facsimile:   (310) 556-9828

Attorneys for Defendant JOHNSON ENTERPRISES, LLC,
a Virginia limited liability company DBA TAILGATING PROS

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P&P IMPORTS LLC, a California limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JOHNSON ENTERPRISES, LLC, a Virginia limited liability company DBA TAILGATING PROS; and DOES 1-10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 8:19-cv-00523-DOC-JDE<br><br>Hon. David O. Carter<br><br>**DEFENDANT JOHNSON ENTERPRISES LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEGAL FEES AND COSTS**<br><br>**REDACTED PUBLIC VERSION**<br><br>Complaint Filed:　March 15, 2019<br>Complaint Served:　April 24, 2019<br>Hearing Date:　September 14, 2020<br>Time:　8:30 a.m.<br>Ctrm:　9D |

---

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   PROCEDURAL HISTORY ............................................................ 2

    A.    The Court's July 28, 2020 Order ........................................... 2

    B.    P&P's Pre-Litigation Conduct ............................................... 4

    C.    P&P's Failure To Offer Evidence Of Trade Dress Infringement
          During Discovery. ................................................................. 5

        1.    As This Court Ruled P&P's Trade Dress Is Not Inherently
              Distinctive And Largely Functional ........................... 5

        2.    P&P Also Failed To Offer Evidence Of Secondary Meaning... 7

        3.    P&P Also Failed To Offer Competent Evidence Of Likelihood
              of Confusion During Fact Discovery. ......................... 9

    D.    P&P's Also Failed To Provide Evidence of Damages...................... 10

    E.    P&P's Discovery Abuses and Litigation Misconduct...................... 13

III.  ARGUMENT.................................................................................. 18

    A.    The Absence of Evidence by P&P Indicates This Case is
          "Exceptional" as Lacking Merit........................................... 20

    B.    P&P's Pre-Litigation and Litigation Misconduct Shows This Case
          Was "Exceptional" ............................................................. 21

    C.    Legal Fees Should Also Be Awarded To Deter P&P From Bringing
          Groundless Lawsuits In the Future ...................................... 23

    D.    Johnson's Legal Fees And Costs  Should Be Awarded Because They
          Are Reasonable.................................................................. 23

IV.   CONCLUSION................................................................................ 25

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) .................................................................. 9

*Amusement Art, LLC v. Life is Beautiful, LLC*,
  2017 WL 2259672 (C.D. Cal. May 23, 2017),
  aff'd in part, 768 Fed.Appx. 683 (9th Cir. 2019) ...................................... 18, 19, 20

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ............................................................. 7, 8

*Bakst v. Community Mem. Health Sys., Inc.*,
  2011 WL 13214315 (C.D. Cal. Mar. 7, 2011).......................................... 8

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) ................................................................. 24

*Cairns v. Franklin Mint Co.*,
  115 F. Supp. 2d 1185 (C.D. Cal. 2000), aff'd 292 F.3d 1139 (9th Cir. 2002)...... 20

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ............................................................... 19

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ................................................................. 24

*City of San Francisco v. Tutor-Saliba Corp.*
  218 F.R.D. 219 (N.D. Cal. 2003).......................................................... 11

*Cotton v. City of Eureka*,
  889 F. Supp.2d 1154 (N.D. Cal. 2012)................................................... 24

The Court's
July 28, 2020 Order ................................................................................ 2

*Cross Commerce Media, Inc. v. Collective, Inc.*,
  2014 WL 7323419 (S.D.N.Y. 2014), *rev'd on other grounds*, 841 F.3d 155 (2d
  Cir. 2016) ............................................................................................ 22

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

Active\113201304.v1-8/12/20

*Designing Health, Inc. v. Erasmus*,
  2003 WL 25902463 (C.D. Cal. 2003) ................................................................. 20

*Dropbox, Inc. v. Thru Inc.*,
  2017 WL 914273 (N.D. Cal., Mar. 8, 2017, No. 15-CV-01741-EMC) ............... 24

*Fiji Water Co., LLC v. FijiMineral Water USA, LLC*,
  741 F. Supp. 2d 1165 (C.D. Cal. 2010) ................................................................. 5

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  654 F.3d 958 (9th Cir. 2011) ................................................................................ 8

*Gravelle v. Kaba Ilco Corp.*,
  2016 WL 3920208 (E.D.N.C. 2016) ..................................................................... 23

*Green Crush, LLC v. Paradise Splash I, Inc.*,
  2019 WL 8640655 (C.D. Cal. 2019) ..................................................................... 22

*Grove v Wells Fargo Financial California, Inc.*,
  606 F.3d 577 (9th Cir. 2010) ................................................................................ 25

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ....................................................................................... 23, 24

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) .................................................................................... 23

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
  456 U.S. 844 (1982) .............................................................................................. 7

*K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*,
  1980 U.S. Dist. LEXIS 16677 (C.D. Cal. 1980) .................................................. 20

*Kilopass Technology, Inc. v. Sidense Corp.*,
  2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ..................................................... 22

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) ............................................................................... 9

*Logic Devices, Inc. v. Apple Inc.*,
  2014 WL 6844821 (N.D. Cal. Dec. 4, 2014) ........................................................ 22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ................................................................................... 18, 19

iii

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

*Oplus Technologies, Ltd. v. Vizio, Inc.*,
    782 F.3d 1371 (Fed. Cir. 2015) .................................................................. 22

*Pac. Info. Res., Inc. v. Simple Commun.*,
    2008 WL 5071110 (N.D. Cal. Nov. 26, 2008) ........................................ 8

*Qualitex Co. v. Jacobson Products Co.*,
    514 U.S. 159 (1995).................................................................................. 7

*Renna v. Cty. of Union, N.J.*,
    2015 WL 1815498 (D.N.J. Apr. 21, 2015)............................................. 19

*Sazerac Company, Inc. v. Fetzer Vineyards, Inc.*,
    2017 WL 6059271 (N.D. Cal. 2017) ....................................................... 23

*Secalt S.A. v. Wuxi Shenxi Const. MacHinery Co.*, 668 F.3d at 687–88 (9th Cir.
    2012) ....................................................................................................... 19

*Societe Civile Succession Guino v. Renoir*,
    305 Fed. Appx. 334 (9th Cir. 2008)....................................................... 20

*Stonebrae LP v. Toll Bros. Inc.*,
    2011 WL 1334444 (N.D. Cal. 2011) ...................................................... 24

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ........................................ 18, 19, 21, 23

*Technology Properties Limited LLC v. Canon Inc.*,
    2017 WL 2537286 (N.D. Cal. 2017) ...................................................... 19

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
    2017 WL 1235766 (S.D. Cal. Apr. 4, 2017) ......................................... 21

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001).................................................................................... 7

*Twentieth Century Fox Film Corp. v. Entertainment Distribution*,
    429 F.3d 869 (9th Cir. 2005) ................................................................. 25

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ................................................................. 24

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    2015 WL 12733442 (C.D. Cal. Mar. 10, 2015)..................................... 21

iv

*Walmart-Stores, Inc. v. Samara Brothers, Inc.*,
   529 U.S. 205 (2000) ................................................................. 7

**Statutes**

*15 U.S.C. § 1117(a)* ...................................................... 1, 18

*15 U.S.C. § 1225(a)* ......................................................... 2

*California Business and Professions Code Section 17200 et seq.* ............................ 2

*Lanham Act* ..................................................... 18, 20

**Other Authorities**

*Fed. R. Civ. P. 26(a)(1)(A)(iii)* ........................................ 10

*Fed. R. Civ. P. 33(d)* ..................................................... 15

*Fed. R. Civ. P. 54(d)(2)* ................................................... 1

*Local Rule 54-7* ............................................................ 1

McCarthy, *Trademarks and Unfair Competition,* §16.34 (4th) ................................ 9

*Rule 30(b)(6)* ................................. 7, 10, 12, 14, 15, 16, 18, 21

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

Active\113201304.v1-8/12/20

Pursuant to this Court's July 28, 2020 Order granting Defendant's Motion for Summary Judgment ("Order") (Dkt. 119), *Federal Rule of Civil Procedure 54(d)(2)*, *15 U.S.C. § 1117(a)*, and *Local Rule 54-7*, Defendant Johnson Enterprises, LLC ("Johnson" or "Defendant") hereby moves for an award of legal fees and costs from Plaintiff P&P Imports LLC ("Plaintiff" or "P&P").

## I.    **INTRODUCTION**

This is a lawsuit that never should have been filed. All that P&P did was take a Game (*i.e.,* the four-in-a-row Game depicted in its Complaint) that was sold by Hasboro and other manufacturers for over forty years; change the colors of the Game using commonly-used, functional elements found in other competitive products; sell its product for only ***10-months and earn*** ██████ ***in revenue*** after learning Johnson sold an allegedly infringing product without any significant promotion or advertising; delay ***15-months before filing suit*** while never sending Johnson a cease and desist letter or any other form of communication; and then file a Complaint claiming that its unregistered trade dress had somehow acquired secondary meaning within ***a 10-month period of time***. Over the course of ***16-months*** after the lawsuit was filed until this Court entered its Summary Judgment Order on July 28, 2020 (Dkt. No. 119) ("Order"), and in preparing this Motion, Johnson ***has spent over $600,000*** defending this baseless litigation. Through fact discovery, P&P never offered facts or law to support its claims, particularly in light of the short period of use and small amount of volume it earned during ***the ten-month*** period P&P sold its product. Having never offered support for its claims during fact discovery, P&P served supplemental discovery responses and documents ***on the last day of discovery*** knowing full well that Johnson would not have the opportunity to conduct discovery relating to this written discovery before fact discovery closed. At the same time, ***it served an expert report which then attempted to offer previously undisclosed facts and legal theories for the first time that P&P never provided in fact discovery.*** This Court has now granted Summary Judgment finding that there is no genuine issue of material fact that

1

P&P can prove secondary meaning, an essential element of P&P's trade dress claim. Under these circumstances, and given the additional circumstances described below, Johnson should be awarded his fees and costs in defending this litigation.[1]

## II.  **PROCEDURAL HISTORY**

P&P filed its Complaint in this action on March 15, 2019, which consisted of claims for: (1) trade dress infringement under *15 U.S.C. Section 1225(a)*; (2) unfair competition under *California Business and Professions Code Section 17200 et seq*.; and (3) unfair competition under California common law (Dkt. 1).  As this Court has ruled, P&P's unfair competition claims under California law "are entirely predicated on its trade dress claim." Order at 9-10. Johnson answered the Complaint on May 14, 2019 denying all material allegations of the Complaint and all of P&P's claims, and asserted several affirmative defenses (Dkt. 13).  Johnson filed a Motion for Judgment on the Pleadings and for Summary Judgment (Dkt. 59) and supporting Memorandum (Dkt. 61) on June 3, 2020 (the "Summary Judgment Motion" or "Motion").  On June 10, 2020, P&P filed its Opposition (Dkt. 71), and Johnson submitted its Reply on June 17, 2020 (Dkt. 76).   On July 28, 2020, *after seventeen-months of unnecessary litigation*, the Court granted Johnson's Motion dismissing all of Plaintiff's claims, denied as moot Johnson's Motion for Judgment on the Pleadings, and terminated this case (Dkt. 119).

### A.    The Court's July 28, 2020 Order

The Court's Order determined that P&P had the burden of proving distinctiveness as an element of its trade dress claim; that Johnson need only show that P&P had failed to present a genuine issue of material fact as to distinctiveness; and that Johnson had done so; therefore making summary judgment appropriate.

_____

[1] On August 10, 2020, P&P filed a Motion for Reconsideration of this Court's Summary Judgment Order (Dkt No. 121-1) ("Order").  As a result, Johnson must now devote more time opposing this Motion and therefore reserve the right to seek additional fees in doing so.

2

Order at 5.  Among other findings, the Court found that "[i]gnoring the functional aspects of P&P Game's design, that P&P's trade dress consists only of a 'flat-white colored square board with evenly spaced round-hole cut-outs…contrasted with the smooth, circular flat-red and flat-blue featureless chips game pieces.'" *Id.* (citing Complaint at 17). The Court further ruled that P&P's asserted trade dress was "plainly not inherently distinctive; there is nothing about a white frame, unmarked red chips, and unmarked blue chips that intrinsically points to Plaintiff or its GoSports brand. It is certainly not so unique or unusual that consumers can be assumed to perceive this color scheme as an indicator of the P&P Game's origin." *Id.* In light of this determination, the Court ruled that there was no genuine issue of material fact that P&P's trade dress was inherently distinctive. *Id*

The Court further ruled that P&P had failed to raise a genuine issue of material fact that P&P's Game's trade dress had acquired secondary meaning.  In the Court's words, "[m]ost fundamentally, nothing in Plaintiff's submissions to the Court indicates that the P&P Game's trade dress has acquired 'primary significance' in the public imagination such that the white frame, unmarked red chips, and unmarked blue chips identify Plaintiff as the source of the P&P Game or that the public associates Plaintiff with the trade dress." *Id*. In doing so, the Court cited several reasons for its conclusions that Plaintiff's "purported evidence [was] unavailing." *Id.* at 5. *First*, the Court found that the Wallace Report's analysis of secondary meaning "is almost entirely irrelevant" (even if the Court accepted as true that 63% of respondents believed that Plaintiff's product was from a single source or company). *Id*.  The Court also found that the "undisputed short period of exclusive use (approximately ten months), relatively low volume of sales [merely ███ before Johnson first began selling its product in October 2017], and Plaintiff's inconsistent use of the trade dress further weighed against any finding of secondary meaning." *Id.* at 5-6.  Finally, the Court concluded that whatever questions exist about advertising and intentional

copying, "they do not rise above the level of a scintilla of evidence and fail to raise a genuine issue of material of fact." *Id.* at 6.

### B.    P&P's Pre-Litigation Conduct.

While P&P brought this lawsuit on March 15, 2019, P&P admitted in its Complaint that it learned Johnson was allegedly already selling an infringing product in *January 2018, 15-months before filing its Complaint*. (Dkt. 1 at 16). Prior to suing Johnson, P&P never communicated with Johnson, including sending him a cease and desist letter or any other form of communication expressing any concern with his Game. *See* Declaration of James E. Doroshow, attached hereto, ("Doroshow Decl") at 5. As a result, Johnson spent over a year developing, manufacturing, marketing and selling a product without any warning or notice from P&P that it ever intended to take any legal action. Had P&P communicated with Johnson prior to filing suit, the parties could of course had tried to resolve their differences without the need for litigation and the substantial costs and fees associated with it. Johnson could also have had the opportunity to avoid spending significant time and expense designing, manufacturing, marketing and selling his product for *18-months* before being sued in March 2019. *See id.*

As P&P's expert, Robert Wallace, testified at his June 22, 2020 deposition, during the *10-month period* between the time P&P first sold its product in December 2016 and when Johnson first sold its product in October 2017, *P&P earned a total of approximately* ███ *from the sale of its Game. See* Doroshow Decl. at 5. As this Court ultimately determined, *this 10-month time of use and relatively low volume of sales were not sufficient to prove secondary meaning*. Order at 6. Significantly, although P&P and Wallace were asked about the time of use and volume of its sales during discovery, *Wallace never discussed either P&P's 10-month length of use or limited sales revenue in his Report even though he length of use and sales revenue are both important legal factors for determining secondary meaning. Id.*

Under these circumstances, P&P knew it could not prove secondary meaning when it discovered Johnson was selling an alleged infringing product in January 2018. ***By waiting to file suit for 15-months***, P&P tried to benefit from delay so it could argue its product had been in the market a longer period of time rather than the ***10-months*** this Court held was insufficient. P&P's expert (Wallace) also waited to conduct surveys until ***two and one-half years*** after Johnson's first use. In addition, as is evident from the fact that P&P ultimately produced sales data and advertising material through ***April 2020, over a year after their suit was filed,*** P&P also tried to benefit from trying to prove it had earned a significantly larger amount of revenue from the sale of its Game long after Johnson first sold its Game. *See id.* at 6. In fact, Wallace testified at his deposition that he thought P&P had earned well in excess of ▮▮▮▮▮▮ from the sale of its product, ***by including sales data through April 2020, one year after this lawsuit was filed***. *See id.* By delaying for this extended period of time, P&P also thought it could obtain more favorable survey evidence by waiting for an additional year after suing Johnson. This strategy ultimately backfired as the Court properly ruled that P&P's trade dress had not acquired secondary meaning due, to a limited 10-month period of use and relatively low sales within that 10-months. Order at 6.

C.    **P&P's Failure To Offer Evidence Of Trade Dress Infringement During Discovery.**

As the Court recognized, "[t]o recover on a trade dress claim, a plaintiff must show (1) that it owns a protectable, non-functional trade dress; (2) that the trade dress is distinctive, either inherently or via acquired secondary meaning; and (3) that the defendant's trade dress creates a likelihood of confusion as to the product's source, affiliation, connection, or sponsorship." Order at 4 (citing *Fiji Water Co., LLC v. FijiMineral Water USA, LLC,* 741 F. Supp. 2d 1165, 1172 (C.D. Cal. 2010)). Here, P&P repeatedly failed to offer any competent evidence in discovery to prove any of these essential elements of a trade dress claim.

1.     **As This Court Ruled P&P's Trade Dress Is Not Inherently Distinctive And Largely Functional**

Since the outset of this case, P&P maintained that its alleged trade dress was "inherently distinctive." For example, P&P alleged in its Complaint that "P&P's FOUR IN A ROW TRADE DRESS comprises the overall appearance of P&P's FOUR IN A ROW…***P&P's FOUR IN A ROW TRADE DRESS is inherently distinctive and nonfunctional.***" (Dkt. 1 at 5-6) (emphasis supplied).  In its Motion, Johnson proved (and this Court agreed) that P&P's trade dress could not possibly be "inherently distinctive" since, among others, it was unregistered, and amounted to nothing more than a color combination of a white board with red and blue game coins or Game pieces when stripped of its functional features.  (Order at 5).

Despite this proof and findings, P&P filed a *Motion In Limine* to try to preclude Johnson from arguing that P&P's alleged trade dress was a the red, white and blue color combination.  (Dkt. 84).[2]  Although, P&P argued in its *Motion in Limine* that "Defendant ha[d] concocted a legally untenable and factually unsupported theory that Plaintiff's trade dress is nothing more than 'the red, white and blue color combination P&P uses" (Dkt. 84 at 4) (*quoting* Defendant's Summary Judgment Motion (Dkt. 59-1)), this Court found that P&P's alleged trade dress was in fact limited to this color combination when "functional aspects of the P&P Game's design" were ignored. Order at 5 ("there is nothing about a white frame, unmarked red chips, and unmarked blue chips that intrinsically points to Plaintiff or its GoSports brand" to show that Plaintiff's trade dress is inherently distinctive).  Thus, ***P&P's legal position was totally inconsistent with the law and facts of this case.***

The Court was also correct to make this ruling since United States Supreme Court precedent had held that product descriptions and colors cannot ever be

---

[2] Johnson's Opposition to P&P's *Motion in Limine* (Dkt. 97) details the unreasonableness of P&P's position, and is incorporated herein by reference.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR LEGAL FEES AND COSTS

Active\113201304.v1-8/12/20

inherently distinctive. *See Walmart-Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 211-212 (2000) ("Indeed, with respect to at least one category of mark—colors—*we have held that no mark can ever be inherently distinctive*"); *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 162-163 (1995) (while colors can obtain secondary meaning over time, *they are not inherently distinctive*)(emphasis supplied)

The Court also correctly ruled commonly-used features of P&P's alleged trade dress were functional. As Johnson demonstrated in its Motion, and as P&P's *Rule 30(b)(6)* deponent Tanoury admitted, except for the colors of P&P's Game all of the elements of P&P's trade dress were commonly-used, functional elements (including circles and legs). *See* Dkt. 59-3 at 3-6. Under Supreme Court precedent, there is no protection for functional features of an alleged trade dress. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001) ("This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional."). *Nevertheless, P&P ignored this governing law disproving its alleged trade dress could not be inherently distinctive as alleged in its Complaint.*

## 2.    P&P Also Failed To Offer Evidence Of Secondary Meaning

To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of the term is to identify the source of the product rather than the product itself. *Inwood Labs, Inc. v. Ives Labs, Inc.,* 456 U.S. 844, 851, n.11 (1982). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Art Attacks Ink, LLC v. MGA Ent., Inc.,* 581 F.3d 1138, 1145 (9th Cir. 2009); *see also* Order at 4-5.

As the Court's Order recognized, the only purported evidence P&P offered to support its claim of secondary meaning was the Wallace Report, which the Court

found to be "almost entirely irrelevant." Order at 5. As the Court explained, even assuming for argument's sake that Wallace was correct that 63% of survey respondents believed that P&P's game was from a single source or company, P&P failed to meet its burden to show that its trade dress had become associated with P&P itself. *See Id.* (*citing Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* 654 F.3d 958, 966-67 (9th Cir. 2011).

Moreover, the Court found that P&P failed to offer proof through any other relevant factor to prove secondary meaning under *Art Attacks.* For example, the Court found P&P's short period of exclusive use (***approximately 10 months***), the low volume of sale during P&P's use (█████████████), and P&P's inconsistent use of its trade dress (*i.e.,* P&P's sale of a Connect 4 game with a brown wood frame and sale of different colored chips) did not create an issue of material fact for purpose of proving secondary meaning. *See* Order at 6. With respect to the length and manner of advertisement and intentional copying, the Court also concluded that "they do not rise above the level of a scintilla of evidence and fail to raise a genuine issue of material fact." *Id.* ***In fact, P&P never even told this Court what amount of money P&P had spent for advertisement***.

In terms of advertisement, the Court was also correct to hold that P&P failed to submit any credible evidence on this issue in opposing Johnson's Motion. All that P&P did was merely point to Wallace's opinions that were never corroborated in discovery or verified in the discovery process. (Dkt. 71 at 22-23) (Doroshow Decl. at 20). Wallace's opinion, which was based upon self-serving interviews with P&P's owners was legally improper since expert opinions must be based on the factual record not informal interviews outside discovery. In obtaining information never disclosed in discovery, P&P clearly failed to obtain evidence needed to raise an issue of material fact regarding secondary meaning. *See Bakst v. Community Mem. Health Sys., Inc.*, 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011) (excluding expert testimony based on factual assumptions unsupported in the record); *Pac. Info. Res.,*

8

*Inc. v. Simple Commun.*, 2008 WL 5071110, at *1 (N.D. Cal. Nov. 26, 2008) (ruling expert opinion inadmissible where the opinion depended on assumptions for which there was no support in the record).

P&P's failure to cite any evidence regarding intentional copying fared no better since it again mainly relied on Wallace's opinion that Johnson copied P&P's games. (Dkt. 71 at 23). Indeed, the only evidence P&P presented in its Opposition was its self-serving statement within its Initial Disclosure stating that Johnson copied P&P's game, without citing to any evidence offered to support this blanket assertion. *See id.* As shown in Johnson's *Motion in Limine* No. 1, an expert like Wallace cannot opine on issues like copying and intent. *See* Dkt. No. 59 at 17-18.

### 3.     P&P Also Failed To Offer Competent Evidence Of Likelihood of Confusion During Fact Discovery.

Likelihood of confusion in the trade dress content is evaluated by reference to the same factors used in the ordinary trademark content: *i.e.,* strength of the trade dress, similarity between plaintiff's and defendant's trade dress, evidence of actual confusion, marketing channels used, type of goods and likely degree of purchaser card, number of competitors, and the defendant's intent in selecting its trade dress. *See AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 349-50 (9th Cir. 1979).

Here, the Court's Order did not address likelihood of confusion between P&P's trade dress and Johnson's Game since the Court already found that P&P failed to prove secondary meaning. *Id.* Indeed, if an alleged trade dress owner cannot demonstrate that its mark had acquired secondary meaning prior to alleged infringer's first use, then the trade dress owner cannot prove infringement because there can be no likelihood of confusion when the alleged infringer began using a similar mark. *See Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1359 (9th Cir. 1985) ("The finding of no secondary meaning in the tab as applied to the shirt market would normally foreclose any possibility of likelihood of confusion."); McCarthy, *Trademarks and Unfair Competition,* §16.34 (4th).  Thus, by failing to

9

prove that its Game acquired secondary meaning, P&P also failed to prove likelihood of confusion.[3]

### D. **P&P's Also Failed To Provide Evidence of Damages.**

*P&P's Initial Disclosures.* On June 7, 2019, P&P served its Initial Disclosures. Despite its obligation to disclose how it computed damages under *Fed. R. Civ. P. 26(a)(1)(A)(iii)*) as part of these Disclosure, P&P merely stated, in relevant part, that "*[P&P] has not yet calculated any of the categories of damages which will be the subject of expert testimony and reports,*" and that "Defendants' financial information and documents, and other information and documents from discovery, are necessary to compute damages property, *with the assistance of damage and other experts.*" (Dkt. 93-1 at 2-3) (emphasis added). *Throughout fact discovery, however, P&P never identified any amount of damages it was seeking, and never identified its method for calculating damages or any facts to support it.* Instead, it simply listed standard textbook categories of damages, such as lost profits and a reasonable royalty without any factual explanation. *See id.* Despite affirmatively representing that it would supplement its Initial Disclosures when further information became available and through a damage expert, P&P never did so. *See id.*[4]

*P&P's Interrogatory Responses.* To try to obtain information missing from

---

[3] In the factual record, P&P never offered competent evidence of confusion. In fact, the only evidence of actual confusion was P&P's claims its owner had been confused (not that an *ordinary consumer* was confused as the law requires). Also, P&P's assertion that consumers were somehow confused by the size of chips used to play P&P's Game had no evidentiary support as P&P had no proof this had anything to do with Johnson or its products. And, in P&P's *Rule 30(b)(6)* deposition Tanoury testified he had no idea why P&P's revenue sales documents P&P cited in its Interrogatories Responses could possibly prove confusion. *See* Doroshow Decl. at 15, 23-25.

[4] P&P's failure to provide any calculation of its damage claims is further detailed in Johnson's *Motion in Limine* No. 2, (Dkt. 93-1), which is incorporated herein by reference.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS
Active\113201304.v1-8/12/20

P&P's Initial Disclosures, on June 7, 2019, Johnson served P&P with a First Set of Interrogatories which P&P responded to on July 8, 2019. (Johnson *Motion in Limine* No 2 (Dkt. 93-1 at 3-7)) As part of Interrogatory No. 12 Johnson specifically requested that P&P identify the amount of damages as well as the factual and legal ground for its damages claim. ***Without answering this Interrogatory, P&P responded, in part, that it sought damages "in an amount to be ascertained through discovery and proven at trial" and that "[t]he final amount of P&P's damages has yet to be ascertained" because "discovery is ongoing."*** *See id.* (emphasis added). Specifically, in its Response, despite being asked to provide relevant information, P&P failed to do so, including explaining: (1) any claimed damage amount, (2) any method for calculating damages, or (3) identify any factual basis for any claimed damages. *See id.*[5] ***In the end, P&P never supplemented its discovery response prior to the close of fact or expert discovery.***

Johnson's Interrogatory No. 18 also requested that P&P "***show or prove irreparable harm to support a claim that PLAINTIFF should be granted injunctive relief***." *Id.* at 5-6 (emphasis added). P&P again responded in relevant part by objecting that this Interrogatory was premature and "***call[ed] for expert witness opinion testimony***…". *Id.* On August 23, 2019, P&P served Johnson with First Amended Responses to the Interrogatories. ***P&P again did not amend or supplement its original Responses to Interrogatory Nos. 12 or 18***. *See id.* On February 4, 2020, P&P served Johnson with Second Amended Responses to the Interrogatories. ***These responses again failed to provide any requested damage information.*** *See id.*

On April 30, 2020, ***the last day of discovery***, P&P served Third Amended Responses to Johnson's Interrogatories. ***P&P again, however, failed to provide any amount of claimed damages or a method for how P&P calculated its claimed***

---

[5] The law requires a plaintiff to provide its answer of damages in sufficient detail to enable each defendant to understand its potential exposure. *See City of San Francisco v. Tutor-Saliba Corp.* 218 F.R.D. 219, 221 (N.D. Cal. 2003).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

*damages.*   In fact, P&P's Response to Interrogatory No. 12 specifically stated that "*[t]he final amount of P&P's damages has yet to be ascertained.  Discovery is continuing*" *even though discovery was then closed. See id.* at 6.  P&P supplemented its third response by identifying documents bates labeled PNPJ0007098 – PNPJ0007107, PNPJ006988 – PNPJ006998, and PNPJ009267 – PNPJ009264 (*See id.* at 6).  *These late served documents, served after the close of business on the last day of discovery, again, did not set forth any damage calculation, any explanation of the methodology P&P used to calculate its claimed damages, or any other relevant information requested by Johnson.*   *See id.* at 7.  *Thus, by the time of trial, Johnson still had no idea what specific damages P&P sought, including the amount of claims or how they were calculated.  At the same time, no damage expert was even retained to address these subjects.*

*P&P's Response To Document Requests*.  On June 7, 2019, Johnson also served P&P with a First Set of Requests for Production of Documents and Things which P&P responded to on July 8, 2019.  *See id.* at 8-9.  Johnson's Document Request No. 37 clearly asked for all documents referring or relating to P&P's contention that it had suffered damages, including "*any monetary or any other form of damage.*"   *See id.*  (emphasis added).  As with its Responses to Johnson's Interrogatories, P&P responded in relevant part by objecting as it had before that this request was premature and called "for expert witness opinion testimony." *Id.*  *As of the close of discovery, P&P never served Johnson with any documents showing the amount of P&P's alleged damages, the methodology used to calculate damages, or the factual basis P&P relied upon to support any claim of damages.*  *Id.* Further, P&P never produced any documents relating to P&P's contention that P&P was entitled to injunctive relief.  Like its Interrogatory responses, P&P also again never supplemented its production to provide a copies of any requested documents. *See id.*

*P&P's Rule 30(b)(6) Deposition Testimony.*  On January 9, 2020, Johnson served P&P with an Amended Notice of Deposition of P&P pursuant to *Fed. R. Civ.*

12

Active\113201304.v1-8/12/20

*P. 30(b)(6)*. *See id.* at 8-9.  Among other subjects, Topic No. 52 specifically asked P&P to produce a designee to testify regarding all damages P&P claimed to have suffered, and how P&P calculated its claimed damages.  *See id.*

On February 10, 2020, Johnson deposed P&P's corporate designee (Peter Tanoury).  Tanoury, one of P&P's owners, testified that he was qualified to testify on P&P's behalf ***as to all topics*** identified in Johnson's Notice, including the issue of P&P's damages.  *See id.*  When asked, however, what damages P&P suffered as a result of Johnson's alleged conduct, all that Tanoury testified was that he "***assume[d] we've lost lots of customers" and that he thought "that our sales price has been slowing declining.***"  *Id.*  At the same time, Tanoury was incapable of offering any further information, noting that he was "***not a damages expert.***"  *Id.*  (emphasis added)

**Expert Testimony And Opinion On The Issue Of Damages**.  Despite P&P's repeated representation that a damages expert would be retained, P&P never designated a damage expert or served an expert report.  Indeed, the only expert that P&P identified during discovery was Wallace who admitted at his deposition that he was not a damage expert and that he had never researched or tried to quantify damages in this case. *See id.* at 9.

P&P had ***more than a year*** to provide requested information and documents regarding damages and injunctive relief, but failed to do so.  ***As a result, by the time of trial, Johnson still had no understanding of the specific amount of damages P&P or the different categories of damages P&P sought, or the method or evidence that P&P would rely upon to calculate and prove damages or injunctive relief.***

**E.     P&P's Discovery Abuses and Litigation Misconduct.**

***P&P delayed serving discovery until the last day of fact discovery***.  Indeed, ***on the last day of discovery***, P&P engaged in a wholesale document dump, when it produced ***what amounted to about 40% of its entire document production***, while also supplementing its Interrogatory Responses. *See* Doroshow Decl. at 16-17.  This

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

Active\113201304.v1-8/12/20

was all done ***two months after P&P's Rule 30(b)(6) deposition.***[6]  *See id.*  P&P's Supplemental Production and Responses served the last day of fact discovery again revealed that P&P lacked evidence to support its claims.

***P&P's Responses to Discovery Requests.***    In responding to various Interrogatories asking P&P to identify the elements of its alleged trade dress and how Johnson allegedly infringed P&P's asserted trade dress, P&P again only referred to the description found in its Complaint and claimed that it was merely the total, "overall look and feel" of P&P's Game that consisted of P&P's alleged trade dress. *See id.* at 8.  This Court ruled in the *Festival Trading* decision that a Plaintiff needs to explain the individual elements of its alleged trade dress.  ***Yet, P&P never told Johnson what P&P claimed were the specific elements of its alleged trade dress or why it believed Johnson infringed P&P's product other than by its "total impression."***  *See* Doroshow Decl. at 8.

At the same time, when Johnson inquired what elements of its Game were allegedly distinctive, arbitrary, had acquired secondary meaning and/or were nonfunctional, P&P again repeated that it was only the "total overall impression" of the Game as set forth in its Complaint.  *See id.* at 9.  It then added: "While discovery is ongoing, it is anticipated that [P&P] will present expert witness opinion testimony on the secondary meaning, including survey evidence, the degree and manner of use, the exclusivity of use, the amount of advertising and media coverage, the amount of sales and number of customers, the established place in the market, and evidence of intentional copying or implied copying…."  *Id.* In doing so, ***no factual information was ever provided Johnson during fact discovery as P&P merely parroted some of the relevant factors for determining secondary meaning without ever saying what facts P&P had to support proof of these factors.***  *See id.*

Johnson also asked P&P to explain what facts it had to show a likelihood of

---

[6] This discovery abuse is further detailed in Johnson's *Motion in Limine* No. 4 to (Dkt. 96-1), which is incorporated herein by reference.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

confusion. *See id*. at 9-10.   Again, P&P objected on the grounds that this required called for a legal conclusion, and invoked *Fed. R. Civ. P. 33(d)* citing to a set of documents *that merely included P&P's sales documents.*   Even though P&P's *Rule 30(b)(6)* witness (Tanoury) verified P&P's Interrogatory responses, he later testified at his deposition *he had no idea* why or how P&P's own sales documents could possibly prove consumer confusion. *See id*.   In addition, he also could not identify any third person who was confused about the parties' respective product or any affiliation between the parties' products.   *See id*.

Johnson also asked about P&P's advertisement of its Game.   *To this day, P&P has never stated what amount of money it spent for advertising its product*. *See id*. at 10.   Johnson also asked P&P to state what forecasted and actual market share it and others had for its Game.   Yet, P&P never answered Johnson's Interrogatory. Instead, it merely responded it "has advertised and sold [its products] in this market and through retailers…" without ever answering Johnson's question about P&P's product share. *Id*.[7]

**P&P's Rule 30(b)(6) Deposition.**   P&P's *Rule 30(b)(6)* deponent (Tanoury) was equally evasive and unprepared to demonstrate any facts P&P had for its claims. Under *Rule 30(b)(6)*, "[t]he person designated must testify about information known or reasonably available to the organization."   However, during his deposition a number of things became clear: (i) P&P had no support (legal or factual) for its claims; (ii) Tanoury lacked knowledge to testify about a number of relevant subjects; and (iii) P&P failed to fully answer a number of Interrogatories Tanoury claimed he knew about.

---

[7] This was particularly significant because P&P's expert Wallace (while admitting he had no actual data to support his claim) later claimed that it was his "perception" that P&P's limited sales of ███████ represented a "fairly significant percentage of all of the four-in-a-row yard game sales sold at that period of time." Doroshow Decl. at 10.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

At the outset of his deposition, Tanoury was asked whether he had read Johnson's deposition notice and the topics listed in it and was the most knowledgeable person to testify on P&P's behalf.  In both cases, he answered in the affirmative. *See* Doroshow Decl. at 12.  Despite Tanoury's claimed knowledge and his designation as the most knowledgeable individual to testify on P&P's behalf, Tanoury lacked knowledge on a number of important topics at his deposition.  *See id.* at 12-15

It was also established at Tanoury's *Rule 30(b)(6)* deposition that apart from the colors used in its Game, all other elements in P&P's alleged trade dress were functional and commonly used in similar Games.  *See id.* at 15.  This of course proved that P&P could not prove essential elements of its trade dress claim, which this Court ultimately ruled were functional in granting Johnson's Motion.  *Id.*  Order at 5.

***Wallace's Expert Report and Deposition***. In terms of secondary meaning and likelihood of confusion, P&P relied almost exclusively on the Wallace Report (*see id.* at 15), which this Court characterized in its Order as "almost entirely irrelevant" to show secondary meaning, and "does not help Plaintiff to meet its burden to show that the trade dress has become associated with Plaintiff itself." *Order at 5.*

Knowing full well that fact discovery was closed, ***P&P tried to use Wallace to provide new facts P&P never disclosed in fact discovery.***  This included information and documents Johnson had requested in fact discovery but never provided by P&P.[8]  At the same time, Wallace's Report and his deposition testimony directly contradicted the limited information P&P had provided in fact discovery. It also demonstrated Wallace's lack of knowledge about the underlying fact record. ***In the end, P&P knew it had no factual support from any fact witness as was evident from its failure to submit a declaration from a fact witness to oppose Johnson's Summary Judgement Motion, but instead relied exclusively on Wallace's Expert Report for***

---

[8] P&P's discovery abuse regarding Wallace and his Report is the subject of Johnson's *Motion in Limine* No. 1 (Dkt. 90-1), which is incorporated herein by reference.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR LEGAL FEES AND COSTS

*factual information never disclosed by P&P in fact discovery to oppose Johnson's Motion*.  Numerous examples of Wallace's attempt to supplement the factual record appear from his Report and his deposition testimony.  *See* Doroshow Decl. at 17-21.

Wallace also testified inconsistently that he believed that the Relevant Date for determining secondary meaning *was at the time the lawsuit was filed in March 2019* (thereby contradicting this Court's Order and controlling legal authority). This also was inconsistent with P&P's position as demonstrated by the fact that P&P sought to rely upon sales data and advertising *as late as a year after this lawsuit was filed*. *See* Doroshow Decl. at 18.

Significantly, there were also a number of important facts that Wallace testified he was also unaware at the time he prepared his Report.  For example, Wallace testified he knew nothing about P&P's 15-month delay in suing Johnson. *See id*.  At the same time, he "speculated" that he thought secondary meaning might already have been established before Johnson entered the market because there were "█████████ ████" the first year P&P sold its product even though there had only been ████████ in sales revenue during this relevant ten-month period.  *Id*.  *P&P for its part never made this assertion in discovery.*

Wallace also testified that he believed P&P had spent 8% of its revenue in advertising before filing suit, and spent money for "pay for click" metrics.  Doroshow Decl. at 18-19.  *Again, this information was never disclosed by P&P in fact discovery*.[9]

Wallace also testified that ████████ in sales during the first 10-months after introducing a product was "████████████████████████" of all four-in-

---

[9] Wallace also testified that he believed P&P had been the exclusive seller up to the time suit was filed, even though P&P never made any such assertion.  Doroshow Decl. at 19.  This too was inconsistent with the factual read since Johnson had been selling an allegedly infringing product for *15-months* with P&P's full knowledge before suit was filed.  *See id*.

17

Active\113201304.v1-8/12/20

a-row game sales at this period of time, even though he admitted he had not researched the issue or had any data to support it. *See id.* at 19. ***Again, P&P never disclosed this "fact" during fact discovery.***

***Although P&P was specifically asked about its advertising during fact discovery, Wallace devoted an entire section of his Report to advertisement that disclosed for the first time information P&P again never disclosed in fact discovery***. *See id.* at 20. According to Wallace, he based his knowledge and opinions on an informal interview he conducted with P&P's two owners, Peter Engler and Peter Tanoury (P&P's Rule 30(b)(6) deponent). *See id.* Obviously, if P&P's owners could impart information to an expert they certainly could have given Johnson the same information in responding to Johnson's discovery. They never did so.

## III.    <u>ARGUMENT</u>

The *Lanham Act* allows for the recovery of legal fees by the prevailing party in "exceptional cases." *15 U.S.C. § 1117(a)*. In the Ninth Circuit, the standard for recovering fees under the Lanham Act has been "relaxed." *Amusement Art, LLC v. Life is Beautiful, LLC*, LLC, 2017 WL 2259672, *3 (C.D. Cal. May 23, 2017), aff'd in part, 768 Fed.Appx. 683 (9th Cir. 2019). Now, a *Lanham Act* case will be considered "exceptional" for purposes of awarding fees "simply" if it "stands out from the others" without having to prove factors such as malice or fraud. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (internal quotations omitted)).

***Under SunEarth, an "exceptional" case for awarding legal fees is "simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated*.**" *Id*. at 1180 (quoting *Octane Fitness*) (emphasis added). There is no "'precise rule or formula for making these determinations.'" *Id*. at 1180-81. Rather, "district courts analyzing a

18

request for fees under the Lanham Act should examine the **'totality of the circumstances'** to determine if the case was exceptional [citation], exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth*, 839 F.3d at 1181 (emphasis supplied). These nonexclusive factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal citations and quotations omitted).

Even before *SunEarth*, a prevailing party was not required to establish bad faith or frivolousness; it was enough to show unreasonableness or an objective lack of merit. *Secalt S.A.*, 668 F.3d at 687–88; *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (fees award affirmed due to insufficient "legal basis" for the plaintiff's claims). After *Octane Fitness* and *SunEarth*, however, it is sufficient for a prevailing defendant to show that the plaintiff's claims had exceptionally **low merit**.[10]

Here, this case qualifies as "exceptional" under not just one but **both** the "substantive strength" and the "unreasonable manner" standards of the test based on the sheer lack of evidence presented by P&P of its trade dress claim and related unfair competition claims. In its Order, the Court found that P&P failed to raise any genuine issue of material fact that P&P's alleged trade dress was inherently distinctive or had acquired secondary meaning. *See* Order at 5-6.

This lack of evidence shows this case is "exceptional" as "one that stands out

---

[10] *See, Amusement Art, LLC*, 2017 WL 2259672, at *4 (fees awarded after findings that the plaintiff's claims were "exceptionally weak" and supported by "almost no evidence"); *Technology Properties Limited LLC v. Canon Inc.*, 2017 WL 2537286, at *2 (N.D. Cal. 2017) (awarding fees to a prevailing defendant where "[t]he merits of Plaintiffs' lawsuit were exceptionally weak"); *Renna v. Cty. of Union, N.J.*, 2015 WL 1815498, at *3 (D.N.J. Apr. 21, 2015) ("[A] party can[not] avoid attorneys' fees because its argument has a sliver of merit. A case that is of exceptionally little merit may expose a party to an award of attorneys' fees.").

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR LEGAL FEES AND COSTS

Active\113201304.v1-8/12/20

1   from the others with respect to the substantive strength of a party's litigating position"

2   as P&P's filing and prosecution of this case was unreasonable. *SunEarth,* 839 F.3d at

3   1180-81.    Moreover, P&P's pre-litigation and litigation misconduct further

4   demonstrates the exceptional nature of this case by "the unreasonable manner in

5   which" P&P litigated it.

6   **A.    The Absence of Evidence by P&P Indicates This Case is**

7       **"Exceptional" as Lacking Merit**

8        As discussed above, P&P pursued this case for 16-months despite a lack of

9   evidence regarding a number of required elements of its claims.  As shown among

10  others, there was no credible evidence to support the following elements of P&P's

11  trade dress and related unfair competition claims.

12       For example,  despite numerous discovery requests asking P&P about evidence

13  of secondary meaning, when it responded to Johnson's Motion, the only purported

14  "evidence" P&P offered to support its claim of secondary meaning was the Wallace

15  Report, which the Court found to be "almost entirely irrelevant." Order at 5.

16       Whereas here a Plaintiff's case is this weak based on a lack of credible evidence,

17  attorney's fees are clearly warranted. *See Amusement Art, LLC*, 2017 WL 2259672, at

18  *4 (fees awarded after findings that the plaintiff's claims were "exceptionally weak"

19  and supported by "almost no evidence"); *Cairns v. Franklin Mint Co.*, 115 F. Supp.

20  2d 1185, 1189 (C.D. Cal. 2000), aff'd 292 F.3d 1139 (9th Cir. 2002) (in awarding legal

21  fees, "plaintiffs should have either not brought the claim in the first instance, or

22  voluntarily dismissed it when it was clear that there was no evidence to support it.");

23  *Societe Civile Succession Guino v. Renoir*, 305 Fed. Appx. 334, 338 (9th Cir. 2008)

24  (in affirming lower court's award of legal fees, "plaintiff's failure to present evidence

25  as to the most "basic elements of any Lanham Act claim" demonstrated the "clearly

26  [] 'groundless" nature of the plaintiff's claim." [internal citation omitted]); *K-Jack*

27  *Eng'g Co. v. Pete's Newsrack, Inc.,* 1980 U.S. Dist. LEXIS 16677, at *4 (C.D. Cal.

28  1980) (finding an exceptional case where the plaintiff's infringement action lacked

20

"any basis of admissible evidence for a good faith belief that such infringement was occurring[.]"); *Designing Health, Inc. v. Erasmus*, 2003 WL 25902463, *19 (C.D. Cal. 2003) (attorney's fees awarded where "there was no evidentiary support for Plaintiffs' theory of trade dress infringement.").

### B.    P&P's Pre-Litigation and Litigation Misconduct Shows This Case Was "Exceptional"

As discussed above, the substantive weakness of P&P's trade dress claim and related unfair competition claims are also sufficient grounds to award attorney's fees under *SunEarth*.   In addition, attorney's fees should also be awarded independently based on P&P's unreasonable manner of litigating this case based on the "totality of circumstances" standard.   *SunEarth*. 839 F.3d at 1181.

***P&P' delay in bringing suit.***   P&P unreasonably delay bringing suit for 15-months after knowing Johnson was already selling an alleged infringing product, and failure to communicate with Johnson before suit, thereby causing Johnson to incur significant costs.   P&P's unreasonable delay in bringing suit further supports an award of legal fees. *See Universal Elecs., Inc. v. Universal Remote Control, Inc*., 2015 WL 12733442 (C.D. Cal. Mar. 10, 2015) (attorney's fees awarded to Defendant even after denial of its summary judgment motion when it was later found that Plaintiffs was not justified in its delay to bring suit); *ThermoLife Int'l, LLC v. Myogenix Corp*., 2017 WL 1235766, *7 (S.D. Cal. Apr. 4, 2017) (attorney's fees awarded to Defendants due to Plaintiff's lack of pre-filing investigation that would have revealed the weakness of the claims, even though it denied summary judgment).

***P&P's discovery abuses throughout this case.***   As also demonstrated above, the record is replete with instances of discovery abuse.   P&P delayed in producing vast amounts of documents and supplementing its Interrogatory responses until ***the last day of fact discovery*** was nothing more than an 'end run' by a party who produces new evidence for the first time at the end of the discovery, which prejudices the opponent.   P&P knew full well that last minute discovery after Johnson had already

21

conducted P&P's *Rule 30(b)(6)* deposition two-months earlier prevented Johnson from inquiring about P&P's untimely supplemental discovery through fact discovery. Moreover, P&P engaged in a consistent campaign to evade responding to relevant discovery, including providing the factual bases for P&P's claims.  P&P's deliberate attempt to sandbag Johnson by only disclosing purported evidence through its expert (Wallace) was also especially egregious considering that Wallace relied on interviews with P&P's founders, Engler and Tanoury, that could not be challenged or verified through fact discovery.  Wallace also made factual assertions that were never disclosed in fact discovery and contradicted the factual record.

Under similar circumstances, courts have awarded attorney's fees based on discovery abuses that reflected the underlying weakness of the non-movant's case. *See Green Crush, LLC v. Paradise Splash I, Inc.,* 2019 WL 8640655, *3 (C.D. Cal. 2019) (attorney's fees awarded to Defendant based on Plaintiff's discovery abuse of failing to supplement discovery responses);  *Oplus Technologies, Ltd. v. Vizio, Inc.,* 782 F.3d 1371, 1373 (Fed. Cir. 2015) (overturning district court's decision not to award fees based on discovery abuses and "improper litigation tactics including presenting contradictory expert evidence and infringement contentions as well as misrepresenting legal and factual support.");  *Logic Devices, Inc. v. Apple Inc.,* 2014 WL 6844821, *4 (N.D. Cal. Dec. 4, 2014) (case was "exceptional" for attorney's fees where Plaintiff conducted a host of discovery abuses including requesting depositions during summary judgment even though no depositions had been taken during fact discovery); *Kilopass Technology, Inc. v. Sidense Corp.,* 2014 WL 3956703, *4 (N.D. Cal. Aug. 12, 2014) (attorney's fees awarded based in part on Plaintiff's "gamesmanship" or arguing inconsistent position before the Court and the Patent Office  and "shifting its theories of infringement late in the litigation without following the proper procedures ....."); *Cross Commerce Media, Inc. v. Collective, Inc.*, 2014 WL 7323419, *3 (S.D.N.Y. 2014), *rev'd on other grounds,* 841 F.3d 155

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

(2d Cir. 2016) (attorney's fees awarded to Defendant where Plaintiff had no protectable mark and took unreasonable positions during discovery).

***P&P's failure to disclose evidence of its alleged damages.*** P&P also failed to comply with its mandatory disclosure and discovery obligations to disclose the amount and computation for each category of P&P's claimed damages, an explanation of P&P's method for calculating damages, and the "evidence" allegedly supporting P&P's damages claims.   P&P initially violated the law by failing to provide the required disclosures in its Initial Disclosures and, later, in response to Johnson's discovery requests. Under these circumstances, attorney's fees based on P&P's failure to disclose damages calculations during discovery is also clearly warranted. *See Sazerac Company, Inc. v. Fetzer Vineyards, Inc.,* 2017 WL 6059271, *8 (N.D. Cal. 2017) (in trademark case, attorney's fees awarded to Defendant where the record could not support a finding of damages or an injunction based on a lack of irreparable harm); *Gravelle v. Kaba Ilco Corp.,* 2016 WL 3920208, *2 (E.D.N.C. 2016) (attorney's fees awarded to Defendant where Plaintiff failed to produce evidence to show that its sales had been affected by Defendant's conduct).

## C.    <u>Legal Fees Should Also Be Awarded To Deter P&P From Bringing Groundless Lawsuits In the Future</u>

By awarding attorney's fees against P&P, this Court can fulfill the important public policy of deterring P&P from bringing objectively baseless lawsuits that unnecessarily expend the Court's judicial resources and unfairly impede fair competition. *See SunEarth*, 839 F.3d at 1181 (in awarding fees, the court should also consider "the need in particular circumstances to advance considerations of compensation and deterrence.").

## D.    <u>Johnson's Legal Fees And Costs  Should Be Awarded Because They Are Reasonable</u>

After a party establishes the right to recover fees, the district court is tasked with evaluating the reasonableness of the rates and amount of hours billed. *Intel Corp.*

23

*v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The analysis begins with the evidence submitted by the moving party as to "the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. "The determination of a reasonable hourly rate 'involves examining the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *4 (N.D. Cal., Mar. 8, 2017, No. 15-CV-01741-EMC) (citing *Cotton v. City of Eureka*, 889 F. Supp.2d 1154, 1167 (N.D. Cal. 2012)). "The 'relevant community' for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Absent a showing that attorneys billed excessive rates or "performed below the level of expertise that would command those rates... the court must presume those requested rates are reasonable." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Moreover, the fact the fees were actually paid by the client "adds weight to the presumption of reasonableness." *Stonebrae LP v. Toll Bros. Inc.*, 2011 WL 1334444, *6 (N.D. Cal. 2011).

Applied here, Johnson seeks legal fees of $632,840.00. As detailed in the accompanying Doroshow Declaration, for a substantial portion of this case, there was just one or two partners working on this case, with occasional help by other attorneys and staff when needed. *See* Doroshow Decl. at 31-35. It was only when fact and expert discovery was completed and the case turned to a Summary Judgment Motion and pretrial work that more than one partner regularly worked on this case. *See id.* Moreover, the rates of the attorneys and legal staff are well within the norm of similar experienced professionals in this District. *See id.* Finally, Johnson timely paid all of its legal fees actually billed, therefore adding weight to the presumption that Johnson's legal fees was reasonable. *See id.*

As the prevailing party, Johnson is also entitled to recover its legal fees for

24

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS

bringing this motion. *See Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981 (9th Cir. 2008) ("it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee."). Given that these fees are also recoverable, the Court should also allow Johnson to supplement its request for legal fees when Johnson's billings are finalized to account for time spent on this Motion.

Finally, Johnson seeks costs in the amount of $7,412.30. *See* Doroshow Decl. at 36. Reasonable out-of-pocket expenses normally charged to a client may be recoverable as part of "reasonable attorney's fees" following the prevailing practice in that legal community. *Grove v Wells Fargo Financial California, Inc*., 606 F.3d 577 (9th Cir. 2010); *see also Twentieth Century Fox Film Corp. v. Entertainment Distribution,* 429 F.3d 869, 885 (9th Cir. 2005) ("Thus, we hold that district courts may award otherwise non-taxable costs").

## IV.  **CONCLUSION**

Based on the foregoing, the Court should grant Defendant's Motion for Legal Fees and Costs and awarded Johnson his legal fees and costs in defending this baseless litigation.


Dated:  August 12, 2020                    Respectfully submitted,


                                           FOX ROTHSCHILD LLP


                                           By: /s/ James E. Doroshow
                                           James E. Doroshow (SBN 112920)
                                           Howard S. Suh (pro hac vice)
                                           Melissa E. Scott (pro hac vice)
                                           Attorneys for Defendant JOHNSON
                                           ENTERPRISES, LLC,  a Virginia
                                           limited liability company DBA
                                           TAILGATING PROS

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES FOR
LEGAL FEES AND COSTS